[Cite as *State v. Mankin*, 2020-Ohio-5317.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-650 |
| | | (M.C. No. 2019 CRB 001492) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jennifer Mankin, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 17, 2020

**On brief:** *Metz, Bailey & McLoughlin, Lauren R. Swihart,* and *Michael K. Fultz,* for appellee. **Argued:** *Lauren R. Swihart.*

**On brief:** *Harris Law Firm, LLC,* and *Felice Harris,* for appellant. **Argued:** *Felice Harris.*

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Jennifer Mankin, appeals from a judgment entry of the Franklin County Municipal Court finding her guilty, pursuant to jury verdict, of criminal trespass and resisting arrest. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On January 24, 2019, officers from the Westerville Division of Police arrested Mankin on one count of criminal trespass in violation of R.C. 2911.21(A)(4), a fourth-degree misdemeanor; and one count of resisting arrest in violation of R.C. 2921.33, a second-degree misdemeanor. Mankin entered a plea of not guilty.

{¶ 3} At a jury trial beginning September 9, 2019, Jeremy Reisinger, a safety and security supervisor at Saint Ann's hospital, testified that on the evening of January 24, 2019,

he responded to a call of a belligerent person in the hospital's emergency department. Reisinger stated that Mankin started videotaping the encounter when the other security guards were in the process of escorting the individual out of the hospital after complaints that the man was threatening the nursing staff and was intoxicated. Mankin followed the security guards outside and continued to videotape. Reisinger then informed Mankin she was not permitted to videotape on private property. Reisinger told Mankin that if she refused to stop videotaping she would need to leave the premises. He further told her she could go across the street and continue to videotape if she so chose. Mankin refused to leave, telling Reisinger and the other security guards that she had a right to be there and a right to videotape their encounter with the other man. The state played for the jury the recording that Mankin took on her cell phone. The state also played a recording of the surveillance footage of the incident obtained from Saint Ann's security cameras.

{¶ 4} Reisinger additionally testified that St. Ann's has a policy not to allow video recording on its premises, except for certain exceptions with patient consent, such as following the birth of a child. There are signs posted throughout St. Ann's hospital stating no videotaping allowed, including at the entries, the lobbies, in the elevators, and in patient rooms.

{¶ 5} While several security guards assisted escorting the other man off the premises, Reisinger and several other security guards continued to stand near Mankin, continually asking her to stop recording or to leave the hospital property. Upon being told to stop recording, Reisinger described Mankin's behavior as "aggressive" and "[v]erbally" combative. (Tr. Vol. I at 100.) At one point, Mankin told the security guards to "stop with [their] thin blue line bullshit and [their] made up rules." (Tr. Vol. I at 104.) He said the disturbance she caused was both from her action of recording in violation of hospital policy and in her reaction upon being asked to stop. Reisinger testified that he and the other security guards tried to deescalate the situation by speaking calmly to Mankin and providing her with more information about the interaction with the other man, but she still refused to leave the property.

{¶ 6} Eventually, Corporal Aaron Dickinson from the Westerville Division of Police responded to the scene and told Mankin she needed to leave the property or she would be arrested. When Mankin, who was still videotaping, again refused to leave the property,

Corporal Dickinson grabbed Makin by the arm and told her she was under arrest. After grabbing her by the arm, Corporal Dickinson said Mankin began pulling her arms away, resisting, and tried to break free of his grasp. Corporal Dickinson testified he tried to put Mankin's arm behind her back but she continued to resist, so he pushed her up against a glass window and held her there until two other security guards could assist him. With the help of the two other security guards, Corporal Dickinson was able to get both of her arms behind her back and place Mankin in handcuffs.

{¶ 7}    Mankin testified that she was at St. Ann's hospital the night of January 24, 2019 with a friend who needed medical attention. She said the man that the security guards ultimately escorted out of the building was not being disruptive. When she saw the security guards surround him, Mankin said she grabbed her phone and followed him outside to record the interaction because the man was "small in stature, and he's black and, you know, you've got these six burly security guards all with guns surrounding the guy." (Tr. Vol. II at 45.) Mankin testified that any time she has seen law enforcement stop someone in the past two years, she has stopped to record the encounter, stating she has done so at least a dozen times to show her support of the Black Lives Matter movement. Further, Mankin testified that she did not believe the security guards when they told her she was on private property. She also stated that when Corporal Dickinson grabbed her arm, the force of his action caused her to trip and she involuntarily reacted but that she was not trying to resist arrest.

{¶ 8}    Prior to trial and again before the jury deliberated, defense counsel requested a specific jury instruction that Mankin had a reasonable, genuine belief that she was acting out of necessity. The trial court denied Mankin's request for the specific instruction on necessity. Following deliberations, the jury found Mankin guilty of both resisting arrest and criminal trespass. The trial court sentenced Mankin to 10 days in jail with 8 days suspended and credit for 2 days served, plus 160 hours of community service and 1 year of non-reporting probation. The trial court journalized Mankin's convictions and sentence in a September 11, 2019 sentencing entry. Mankin timely appeals. The trial court issued a stay of Mankin's sentence pending appeal.

## II. Assignments of Error

{¶ 9}   Mankin assigns the following errors for our review[1]:

[1.] The trial court erred by failing to maintain the written jury instructions as a permanent part of the trial record for use on appeal.

[2.] The trial court committed plain error by failing to properly instruct the jury on the elements of criminal trespass.

[3.] Jennifer Mankin was denied the effective assistance of counsel guaranteed by the United States and Ohio Constitutions.

[4.] The trial court abused its discretion in denying the requested jury instruction on necessity.

## III. First Assignment of Error – Maintaining Written Instructions

{¶ 10}  In her first assignment of error, Mankin argues the trial court erred in failing to maintain the written jury instructions as a permanent part of the trial record for use on appeal.  The trial court issued oral instructions to the jury prior to their deliberations and provided the jury with the written instructions.  Additionally, the trial court responded to a question from the jury by instructing the jurors to refer back to the written instructions.  However, when the trial court transmitted the trial record for purposes of appeal, the written instructions were not included in the record.  Because the trial court's oral instructions differed from its written instructions, as will be discussed further in Mankin's second assignment of error, Mankin argues the trial court's failure to maintain the written jury instructions as part of the trial record for use on appeal amounts to prejudicial error pursuant to R.C. 2315.01(A)(7).[2]

---

[1] Mankin did not advance any arguments related to her conviction for resisting arrest, so that conviction is not before this court.

[2] While Mankin advances this argument pursuant to R.C. 2315.01(A)(7) in her memorandum contra the state's motion for leave to supplement, we note that nearly identical language appears under R.C. 2945.10(G).  Indeed, in her merit brief, Mankin frames the argument under R.C. 2945.10(G).  Because R.C. 2315.01 relates to trial proceedings more generally, including civil trials, while R.C. 2945.10 relates specifically to criminal trials, and because the language of these two statutes is the same in all relevant respects, the cases applying to R.C. 2945.10(G) are equally applicable to Mankin's argument under R.C. 2315.01(A)(7).

**A.  State's Motion for Leave to Supplement the Record**

{¶ 11} On April 15, 2020, in response to learning the trial court failed to maintain the written jury instructions as part of the record when it certified the record for appeal, the state filed with this court a motion for leave to supplement the record with the trial court's written jury instructions pursuant to App.R. 9(E).  As the state notes, there is no dispute here that written instructions existed and were provided to the jury prior to deliberation.  Thus, the state categorizes the trial court's failure to maintain the written instructions as part of the record as a filing omission capable of correction.  Pursuant to App.R. 9(E), "[i]f anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted."

{¶ 12} Mankin opposes the state's motion for leave to supplement the record, arguing the state's motion amounts to a concession that the trial court did not comply with the requirement of R.C. 2315.01(A)(7) that the written charges and instructions "taken by the jurors in their retirement" must be maintained with the papers of the case.  Mankin asserts that R.C. 2315.01(A)(7) does not contemplate a situation in which the trial court can substitute in the record the copy of the jury instructions handed to trial counsel during the trial for those taken by the jurors in their retirement.  Thus, because the state seeks to supplement the record with a *copy* of the written instructions taken by the jurors in their retirement rather than with the *original* version of the written instructions taken by the jurors in their retirement, Mankin argues that granting the motion for leave to supplement would be improper as "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.

{¶ 13} The Supreme Court of Ohio has stated that, in a motion to supplement the record filed pursuant to App.R. 9, it is for the trial court to " 'first determine the accuracy and truthfulness of a proposed statement of the evidence or proceedings' " before a court of appeals can authorize correction or supplementation of the trial court's record.  *State v. Schiebel*, 55 Ohio St.3d 71, 81-82, quoting *Joiner v. Illuminating Co.*, 55 Ohio App.2d 187,

195-96 (8th Dist.1978). In support of its motion for leave to supplement the record, the state submitted a copy of the written instructions provided to the jury and a signed affidavit of the trial court judge averring that the instructions are a true and accurate representation of the written instructions provided to the jurors for use during their deliberations in Mankin's trial. Thus, because the trial court has attested to the accuracy and truthfulness of the written jury instructions as reflecting those submitted to the jury during its deliberations, we grant the state's motion for leave to supplement the record. *See Schiebel*.

## B. Failure to Maintain Original Written Instructions

{¶ 14} Having granted the state's motion for leave to supplement the record with a copy of the written jury instructions provided to the jury during its deliberations, we turn to the merits of Mankin's first assignment of error. Similar to her argument in opposition to the state's motion for leave to supplement the record, Mankin argues that the trial court's failure to maintain the original version of the written instructions provided to the jury amounts to reversible error.

{¶ 15} Mankin's emphasis on the distinction between the original written jury instructions and a verified copy of those written jury instructions is tantamount to an argument that the trial court's error is a structural error requiring reversal. However, as the Supreme Court of Ohio has held, "the failure of the trial court to preserve the written jury instructions with the 'papers of the case' is not a structural error," and instead is subject to plain error analysis under Crim.R. 52(B). *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 25-26. Thus, even assuming for purposes of argument that a trial court can only satisfy R.C. 2315.01(A)(7) or R.C. 2945.10(G) by maintaining the original written jury instructions with the papers of the case as opposed to a copy of those jury instructions, Mankin is still required to demonstrate that the trial court's failure amounts to plain error. An appellate court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139.

{¶ 16} For an error to be a "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have

affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 17} The purpose of the statutory requirement under R.C. 2315.01(A)(7) or R.C. 2945.10(G) that the trial court maintain the written instructions as part of the papers of the case is to facilitate appellate review of questions related to jury instructions. Here, there is no allegation that the copy of the written instructions that we have granted leave to supplement the record with are in any way different than the original version of those instructions provided to the jury during the trial. Though Mankin advances arguments in her remaining assignments of error related to the content of those instructions, the supplemented record allows us to adequately and fully review the proceedings in the trial court. Thus, it cannot be said from this record that the trial court's failure to maintain the original written instructions as part of the papers of the case, on its own, affected the outcome of the trial. *State v. Perry*, 10th Dist. No. 01AP-996, 2004-Ohio-5152, ¶ 12 ("[h]aving found that the outcome of the case was not affected by the trial court's failure to maintain written jury instructions with the 'papers of the case,' we therefore cannot conclude the trial court's error affected a 'substantial right' "). Without such a showing, we will not find the trial court's failure to maintain the original written instructions to amount to plain error under Crim.R. 52(B). *Id.* (noting "[a]bsent a 'substantial right' having been affected, pursuant to Crim.R. 52(B), plain error cannot exist"). Thus, we overrule Mankin's first assignment of error.

## IV. Second Assignment of Error – Criminal Trespass Instruction

{¶ 18} In her second assignment of error, Mankin argues the trial court erred in failing to properly instruct the jury on the elements of criminal trespass. More specifically, when the trial court orally instructed the jury on the elements of criminal trespass, it omitted lack of privilege as an element of the offense. Mankin did not object to the oral jury instructions at trial and, thus, has waived all but plain error. *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 28, citing *State v. Cook*, 65 Ohio St.3d 516, 527 (1992). A court will reverse on plain error based on an erroneous jury instruction only upon a showing that the outcome " 'clearly would have been different absent the error.' " *State v. Petty*, 10th Dist. No. 11AP-716, 2012-Ohio-2989, ¶ 15, quoting *State v. Zachery,* 10th Dist. No. 08AP-451, 2009-Ohio-1180, ¶ 8.

{¶ 19} R.C. 2911.21(A)(4), the criminal trespass statute, provides no person being on the land or premises of another "without privilege to do so" shall "negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either."  In instructing the jury prior to deliberations, however, the trial court stated:

> The defendant is charged with criminal trespass.  We just did that.
>
> Being on land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either.

(Tr. Vol. II at 104.)  Thus, the trial court failed to orally state the "without privilege to do so" portion of the offense of criminal trespass.

{¶ 20} "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged."  *State v. Adams*, 62 Ohio St.2d 151, 153 (1980).  However, "a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction."  *Id.* at 154.  Instead, "[o]nly by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice."  *Id.*

{¶ 21} Mankin asserts that because her entire defense rested upon her belief that she had privilege to remain on St. Ann's premises and continue videotaping, the trial court's erroneous oral instruction amounted to prejudicial error.  Though the state agrees that the trial court's oral jury instruction omitted the "without privilege to do so," the state asserts the error does not rise to the level of plain error.  Importantly, the parties agree that the written instructions submitted to the jury during its deliberations provided a complete instruction on the elements of criminal trespass.  Specifically, the written instructions stated:

> The defendant is charged with Criminal Trespass.  Before you can find the Defendant guilty, you must find beyond a

> reasonable doubt that on or about the 24th day of January, 2019, in the City of Westerville, Franklin County, Ohio, the defendant did and without privilege to do so, shall do any of the following:
>
> Being on land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either[.]

(Ex., Jury Instructions attached to Apr. 15, 2020 Mot. for Leave to Supplement.) Additionally, both the written instructions and the trial court's oral instructions included the definition of "privilege." Specifically, the trial court orally instructed the jury that "[p]rivilege means an immunity, license, or right conferred by law, bestowed by express or implied grant, or rising out of status, position, office, or relationship, or growing out of necessity." (Tr. Vol. II at 105.) The identical definition of privilege appears in the written instructions submitted to the jury during their deliberations. Because the full instruction on criminal trespass was in the written instructions, and the record demonstrates that the trial court additionally instructed the jury to refer back to the written instructions when it had a separate question on the elements of resisting arrest, the state argues the instructions provided adequately informed the jury of the elements of the offense.

{¶ 22} We are mindful that " '[i]n examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole.' " *State v. Rutledge*, 10th Dist. No. 17AP-590, 2019-Ohio-3460, ¶ 31, quoting *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995). Here, in considering the whole charge to the jury, including both the oral and written instructions, the trial court's omission of the lack of privilege element of criminal trespass was an isolated incident during the oral instructions that did not appear in the written instructions. This court has previously found that there is no plain error in an oral instruction omitting an element of an offense where the written instructions submitted to the jury cured that defect. *State v. Philpot*, 10th Dist. No. 03AP-758, 2004-Ohio-5063, ¶ 39 (where trial court orally instructed that a jury need only find "physical harm" to reach a guilty verdict on felonious assault but cured the statement by then defining "serious physical harm" in both its oral and written instructions, this court found "that the written instructions cured the oral omission in the felonious assault instruction and plain error has

not been demonstrated").  Similarly here, where the oral instructions omitted the reference to lack of privilege but the written instructions submitted to the jury cured that omission, both the oral and written instructions contained the definition of privilege, and the record demonstrated that the jury had the written instructions during deliberations and was instructed to refer back to them, we do not find on this record that the trial court's error in its oral instructions to the jury rises to the level of plain error.

{¶ 23} To the extent Mankin argues the discrepancy in the jury instructions is more important here because her entire defense rested on her belief that she had privilege to be on the premises born out of necessity, the interplay between necessity and privilege is the subject of Mankin's fourth assignment of error, which we will address below.  Under her second assignment of error, however, we find that Mankin has not demonstrated that the trial court's failure to orally instruct on lack of privilege as an element of criminal trespass amounts to plain error.  Accordingly, we overrule Mankin's second assignment of error.

## V.  Third Assignment of Error – Ineffective Assistance of Counsel

{¶ 24} In her third assignment of error, Mankin argues she received the ineffective assistance of counsel.  More specifically, Mankin asserts her trial counsel was ineffective in failing to object to various portions of the jury instructions.

{¶ 25} In order to prevail on a claim of ineffective assistance of counsel, Mankin must satisfy a two-prong test.  First, she must demonstrate that her counsel's performance was deficient.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  This first prong requires Mankin to show that her counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  If Mankin can so demonstrate, she must then establish that she was prejudiced by the deficient performance.  *Id.*  To show prejudice, Mankin must establish there is a reasonable probability that, but for her counsel's errors, the result of the trial would have been different.  A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial.  *Id.* at 694.

{¶ 26} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.  Mankin contends her trial counsel was ineffective in (1) failing to object to the state's

requested jury instruction that it is no defense that the land or premises was owned or controlled or in the custody of a public agency; and (2) failing to object to the trial court's oral instruction omitting the element of lack of privilege.

### A.  Failing to Object to Control or Custody of Public Agency Instruction

{¶ 27} Mankin's first allegation of ineffective assistance of counsel is her trial counsel's failure to object to the state's request for an instruction that "it is no defense [t]o a charge under [the criminal trespass statute] that the land or premises involved was owned or controlled or in custody of a public agency."  (Tr. Vol. II at 75.)  Mankin argues this instruction was confusing to the jury since St. Ann's hospital is private property.

{¶ 28} To succeed on a claim of ineffective of counsel based on counsel's failure to file an objection, the appellant must demonstrate that the objection had a reasonable probability of success.  *State v. Jones*, 10th Dist. No. 18AP-33, 2019-Ohio-2134, ¶ 52, citing *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25.  If the objection would not have been successful, the appellant cannot prevail on a claim of ineffective assistance of counsel.  *Id.*, citing *Johns* at ¶ 25.

{¶ 29} Here, Mankin's trial counsel did not object to the state's request for the instruction, instead noting it was "a correct statement of law." (Tr. Vol. II at 75-76.)  Indeed, the instruction directly tracks the language of R.C. 2911.21(D).  Nonetheless, Mankin argues her trial counsel was ineffective in acquiescing to the instruction because, even though it was a correct statement of the law, it was arguably not relevant since St. Ann's hospital is private property.  However, the testimony at trial repeatedly referenced recording in a public place, and Mankin attempted to assert a defense that she did not know the hospital was private property.  She even testified to her own personal understanding of what she would consider a private space within a hospital and what she would consider to be more of a public space.  As it was Mankin's own trial strategy to call into question the public-versus-private nature of the premises, we do not agree with Mankin's assertion that the trial court's instruction was not relevant or that it was misleading to the jury.  Thus, we do not find that an objection to this instruction would have had a reasonable probability of success.

### B.  Failing to Object to Erroneous Oral Instruction

{¶ 30} Mankin's second instance of alleged ineffective assistance of counsel is her trial counsel's failure to object to the trial court's oral instruction on the elements of

criminal trespass omitting the lack of privilege. This argument reflects the argument Mankin made under her second assignment of error on appeal. Because trial counsel failed to object to the trial court's oral jury instructions, we reviewed Mankin's second assignment of error under a plain error standard, and, in disposing of that argument, we concluded Mankin was unable to demonstrate plain error. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 1oth Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. Having previously held, in addressing Mankin's second assignment of error, that the trial court did not plainly err when it instructed the jury on the elements of criminal trespass, we conclude Mankin's argument in this regard fails to satisfy the second prong of the *Strickland* test.

{¶ 31} Thus, because Mankin cannot satisfy the *Strickland* test under either of her instances of alleged ineffective assistance of counsel, Mankin's claim of ineffective assistance of counsel must fail. Accordingly, we overrule Mankin's third assignment of error.

## VI. Fourth Assignment of Error – Necessity Instruction

{¶ 32} In her fourth and final assignment of error, Mankin argues the trial court erred when it refused her request for a specific jury instruction on necessity.

{¶ 33} In reviewing a trial court's jury instructions, an appellate court must determine whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. *State v. Gover*, 10th Dist. No. 05AP-1034, 2006-Ohio-4338, ¶ 22, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 34} "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." *State v. Joy*, 74 Ohio St.3d 178, 181 (1995), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Conversely, "[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991), citing *Riley v. Cincinnati*, 46 Ohio St.2d 287 (1976). Thus, in reviewing a record to determine whether there is sufficient evidence to support the giving

of an instruction, "an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Murphy* at 591, citing *Feterle v. Huettner*, 28 Ohio St.2d 54 (1971), syllabus.

{¶ 35} Criminal trespass, as defined in R.C. 2911.21(A)(4), provides "[n]o person, without privilege to do so, shall * * * [b]eing on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either." Privilege, as defined in R.C. 2901.01(A)(12), means "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." As we discussed in our resolution of Mankin's first and second assignments of error, the trial court provided instructions containing the statutory elements of criminal trespass as well as an instruction defining privilege. However, the trial court did not provide a separate instruction defining necessity in the context of privilege.

{¶ 36} There is not a statutory definition of necessity as it is used in the definition of privilege. However, at trial, Mankin requested the following instruction on necessity:

> The state must prove beyond a reasonable doubt that the defendant did not act out of necessity when committing a criminal trespass. If you find that the defendant was acting out of necessity or that the state has not proven beyond a reasonable doubt that she did not act out of necessity than you must find her not guilty because necessity justifies or excuses criminal conduct when the defendant acts under the force of extreme circumstances to prevent a greater harm occurring. However, the defense of necessity is not available if alternatives to criminal trespass are available.
>
> When deciding if the defendant acted out of necessity you should consider the following:
>
> - whether the defendant committed the act of criminal trespass to avoid or prevent a separate harm
>
> - whether the harm to be avoided or prevented would have been as severe or more severe than the harm created by the defendants trespass

- whether the defendant reasonably believed at the time that her conduct to be necessary and designed to avoid the imminent harm that would be created if she did not act, and

- whether the defendant had any alternatives to prevent the harm other than committing the trespass[.]

(Sic passim.)  (Sept. 6, 2019 Def.'s Mot. for Specific Jury Instructions at 3-4.)  In support of the instruction, Mankin states she relied on the necessity instruction included in the Ohio Jury Instructions ("OJI") and additional caselaw.

{¶ 37}  When the trial court considered Mankin's request for the specific instruction, it expressed concern that the instruction would confuse the jury and would be harmful to the defendant.  Defense counsel asked the trial court to nonetheless include the instruction as it was a correct statement of law.  The state, in response, argued the instruction should not be included because there was not any evidence to establish that "there was any potential physical or natural course that would have been a harm more severe than the defendant's conduct" and that there was not any evidence or testimony establishing "that there was danger to [the other] gentleman."  (Tr. Vol. II at 79.)  Defense counsel again reiterated that because the state must disprove necessity, under the definition of privilege, the instruction was appropriate because "[t]here has been testimony that she believed a greater harm was going to occur, and she was reasonable in that belief to prevent that harm."  (Tr. Vol. II at 80.)  The trial court again reiterated the concern that the instruction would be confusing and ultimately refused to include the instruction.

{¶ 38}  On appeal, Mankin asserts the trial court abused its discretion in refusing to give the instruction because it was an accurate statement of the law and there was evidence at trial to support the instruction.  As an initial matter, we agree with Mankin that in the context of criminal trespass, necessity is not an affirmative defense; rather, it is part of the definition of "privilege" contained in R.C. 2901.01(A)(12).  "Because the statutory definition of privilege incorporates the defense of necessity, proof that the accused lacked a privilege to enter or remain on the property by virtue of a right growing out necessity is an element of the crime of trespass and not an affirmative defense." *Columbus v. Andrews*, 10th Dist. No. 91AP-590, 1992 Ohio App. LEXIS 829 (Feb. 27, 1992).

{¶ 39} The state argues that in light of the evidence presented at trial, the trial court was not required to instruct the jury regarding necessity. This court has previously set forth "a complete and adequate definition of necessity" as it is used in the context of privilege for criminal trespass. *Andrews*. Specifically, this court has stated " '[t]he common-law elements of the defense of necessity are: (1) the harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than (or at least equal to) that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm.' " *Id.*, quoting *Kettering v. Berry*, 57 Ohio App.3d 66, 68 (2d Dist.1990).

{¶ 40} In comparing Mankin's proposed instruction to the "complete and adequate" definition of necessity above, we note some key differences. First, the proposed instruction completely omits the fourth prong of the definition: that the actor must be without fault in bringing about the situation. The state does not allege that Mankin was at fault for bringing about the interaction between the other man and the security guards, but the omission of that prong of the definition nonetheless undercuts Mankin's repeated argument that her proposed instruction was an accurate statement of the law.

{¶ 41} Additionally, and more importantly, the first prong of the definition of necessity from *Andrews* requires that "the harm must be committed under the pressure of physical or natural force, rather than a human force." *Andrews*. The OJI necessity instruction, found at 2 421 OJI CR 421.13, similarly lists the first element of necessity as the defendant having committed the offense "to avoid being harmed by (*describe physical or natural force*)." (Emphasis sic.) In fact, the OJI instruction repeats the "physical or natural force" requirement in each of the five elements of necessity. Despite Mankin's assertion that she relied on the OJI instruction in formulating her requested instruction, it is significant that her proposed instruction eschews any mention that the harm must be from a physical or natural force rather than a human force, instead phrasing each of the elements of necessity as intending to avoid a more general "separate harm." (Def.'s Mot. for Specific Jury Instructions.) This difference is critical. Because both the case law and the OJI

instruction define necessity as a harm from a physical or natural force, rather than a human force, we do not agree with Mankin that her proposed instruction represents an accurate statement of the law.

{¶ 42} Further, even if we were to find the trial court should have nonetheless provided the jury with a *correct* instruction on necessity, any error from the trial court's refusal to so instruct would be, based on this record, harmless error. Even assuming Mankin could point to evidence that that "harm" she sought to avoid, namely, her perception of the security guards' treatment of the other man as being impacted by the man's race, was the type of harm contemplated under the necessity instruction, she still would be unable to point to any evidence tending to support the fifth prong of the necessity definition: that the harm was imminent and she had no alternative other than to commit the offense of criminal trespass. The video evidence introduced at trial showed the security guards at St. Ann's remained calm as they escorted the man off the premises, and the man was not resisting or ignoring their instructions. It was Mankin who approached the situation in a state of agitation, yet the security guards remained calm while they repeatedly asked her to stop recording. Security guards even informed Mankin that she could go across the street and continue recording, giving her a clear alternative to committing the offense of criminal trespass. Further, when Corporal Dickinson arrived on the scene, he testified that the interaction with the other man and the security guards was "peaceful and under control" while Mankin continued to cause a disturbance. (Tr. Vol. II at 22-23.) The video evidence corroborates Corporal Dickinson's description of the scene.

{¶ 43} Thus, even if we were to find the trial court's failure to provide a *correct* instruction on the lack of necessity as an element of the offense of criminal trespass was an abuse of discretion, given the particular facts of this case, the record does not contain evidence from which reasonable minds might reach the conclusion that Mankin acted out of necessity when she refused to leave the St. Ann's premises and continued videotaping. *See State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 52-58. Accordingly, any error in failing to give a separate instruction on necessity would be harmless error. *See State v. Dodson*, 10th Dist. No. 10AP-603, 2011-Ohio-1092, ¶ 6 ("[a]n appellate court will not reverse a conviction in a criminal case due to jury instructions unless it finds that the

jury instructions amount to prejudicial error"). For all of these reasons, we overrule Mankin's fourth and final assignment of error.

## VII. Disposition

{¶ 44} Based on the foregoing reasons, the trial court's failure to maintain with the papers of the case the original version of the written instructions taken by the jury during their retirement did not amount to reversible error, the trial court did not plainly err in instructing the jury on the lack of privilege as an element of criminal trespass, Mankin did not receive the ineffective assistance of counsel, the trial court did not abuse its discretion in refusing to give Mankin's requested instruction on necessity, and any error the trial court committed in failing to give a correct instruction on necessity amounted to harmless error. Having granted the state's motion for leave to supplement the record and having overruled Mankin's four assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Motion for leave to supplement the record granted;*
*judgment affirmed.*

SADLER, P.J., and BROWN, J., concur.