[Cite as *State v. Kessler Scott*, 2022-Ohio-4054.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

    Plaintiff-Appellee,

- vs -

BRANDON J. KESSLER SCOTT,

    Defendant-Appellant.

CASE NO. 2022-L-018

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 001215

# O P I N I O N

Decided: November 14, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor; *Teri R. Daniel* and *Haley L. Gold*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Brandon J. Kessler Scott ("Mr. Kessler Scott"), appeals from the judgment of the Lake County Court of Common Pleas, which sentenced him to two years of community control after he was found guilty by a jury of possession of a fentanyl-related compound.

{¶2} Mr. Kessler Scott raises three assignments of error on appeal, contending that (1) the evidence was insufficient to sustain his conviction because there was no evidence of constructive possession; (2) the manifest weight of the evidence does not support the verdict because the testimony of his alleged accomplice, Andrew Combs ("Mr.

Combs"), was the only evidence linking him to the crime, and Mr. Combs was not credible; and (3) the trial court committed plain error by instructing the jury on flight as consciousness of guilt because he simply returned home after fleeing the traffic stop that initiated the instant case, and the police easily located him the following day.

{¶3} After a careful review of the record and pertinent law, we overrule Mr. Kessler Scott's assignments of error, finding them to be without merit. Firstly, the state introduced sufficient evidence from which a jury could find beyond a reasonable doubt that Mr. Kessler Scott was guilty of possession, i.e., both he and Mr. Combs admitted to using the drugs, the drugs were stored in his container, and the drugs were found in close proximity to his person (the center console of Mr. Combs' grandmother's vehicle).

{¶4} Secondly, the manifest weight of the evidence more than supports the jury's verdict. The jury was free to believe all, part, or none of Mr. Combs' testimony, and the jury was aware that Mr. Combs purchased the drugs, pleaded guilty to possession of the same drugs in a separate case, and admitted to initially lying to the police during the traffic stop. Further, Mr. Combs' testimony was not the only evidence linking Mr. Kessler Scott to the crime. The state introduced testimony from the officers on the scene and from the police interview once Mr. Kessler Scott was in custody, a forensic analyst, photographs of the drugs and the container, as well as an aerial map detailing the officers' search for Mr. Kessler Scott after he fled from the traffic stop.

{¶5} Thirdly, the trial court did not commit plain error by instructing the jury on flight as consciousness of guilt. The state produced sufficient evidence to warrant the instruction, and the trial court provided a neutral instruction, i.e., the jury was instructed it "may" consider whether Mr. Kessler Scott's conduct in fleeing from the traffic stop was

2

motivated by consciousness of guilt for possession of drugs. The jury was aware that Mr. Kessler Scott had an outstanding warrant in an unrelated case.

{¶6}  Finding Mr. Kessler Scott's assignments of error to be without merit, the judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶7}  In late summer 2021, a deputy from the Lake County Sheriff's Office was on patrol when he observed a vehicle with an expired registration tag. He initiated a traffic stop, and as the 2016 Chrysler pulled over and shifted into park, the passenger, later identified as Mr. Kessler Scott, exited the vehicle and fled. The deputy reported to dispatch that Mr. Kessler Scott was running westbound while he detained Mr. Combs, the driver of the vehicle and Mr. Kessler Scott's long-time acquaintance and alleged accomplice.

{¶8}  At least four officers attempted to find Mr. Kessler Scott, conducting a search that spanned the surrounding area, including several barns, a house, and a wooded area, as well as setting up a perimeter. After over an hour of searching, however, the officers ended the search and returned to the vehicle.

{¶9}  Mr. Combs identified Mr. Kessler Scott for the officers and gave them permission to search his grandmother's vehicle. In the center console, the officers found a white box with two envelopes inside, which Mr. Combs disclosed contained fentanyl. A forensic analyst from the Lake County Crime Laboratory later confirmed the white powder in the envelopes was fentanyl.

{¶10}  Following a tip from Facebook, the officers were able to locate Mr. Kessler Scott at Mr. Combs' residence the next day. He was living in the garage of Mr. Combs' home, which Mr. Combs shared with his grandmother. The officers found Mr. Kessler

3

Scott inside a barn just south of the house, and he was placed under arrest for an outstanding warrant in an unrelated case.

{¶11} During the police interview, Mr. Kessler Scott disclosed to the officers that he and Mr. Combs had driven to Cleveland to purchase the fentanyl. On their way home, they stopped to snort some of the drugs. Mr. Kessler Scott identified the drugs as belonging to Mr. Combs.

{¶12} Ultimately, both Mr. Combs and Mr. Kessler Scott were charged in separate cases for possession of the drugs. Mr. Combs pleaded guilty in his case while Mr. Kessler Scott's case was pending. Mr. Kessler Scott was charged with possession of a Schedule I controlled substance, fentanyl, in violation of R.C. 2925.11, a fifth-degree felony. He pleaded not guilty, and the case proceeded to a one-day jury trial.

{¶13} The state introduced the testimony of Mr. Combs, two of the officers who were at the scene, one of whom conducted a police interview once Mr. Kessler Scott was taken into custody, and a forensic analyst from the Lake County Crime Laboratory, as well as photographs of the drugs, the container, and an aerial map depicting the officer's search for Mr. Kessler Scott after he fled Mr. Combs' vehicle.

{¶14} Mr. Combs testified that on the date of the incident, he and Mr. Kessler Scott drove to Cleveland where he purchased 1.2 grams of fentanyl, something they did "every morning." They stored the drugs in Mr. Kessler Scott's container. After snorting it on the side of the road, they purchased some crack. On their return to Lake County, they got "high" at Mr. Combs' grandmother's house, and decided to drive to the store, which is when the traffic stop occurred. Mr. Combs consented to a search of the vehicle because he thought Mr. Kessler Scott had taken all of the drugs with him when he fled. Mr. Combs admitted that he initially lied to the police when he told them that he picked up Mr. Kessler

4

Scott on the side of the road. He was "scared" and, knowing that Mr. Kessler Scott had a warrant out for his arrest, did not want the officers to know that Mr. Kessler Scott was staying at his house.

{¶15} As relevant to the instant appeal, the trial court overruled defense counsel's Crim.R. 29 motion challenging the sufficiency of the evidence and the renewed Crim.R. 29 sufficiency of the evidence motion in which defense counsel argued that the state failed to meet its burden of proof.

{¶16} Further, the trial court instructed the jury on the impact of flight, explaining:

{¶17} "Testimony has been admitted indicating that the defendant fled the scene of the alleged crime. You are instructed that flight alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness or awareness of guilt. If you find that the facts do not support that the defendant fled the scene of the alleged crime or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct, and if you decide that the defendant was motivated by a consciousness or awareness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crime charged. You alone will determine what weight, if any, to give to this evidence."

{¶18} The jury returned a verdict finding Mr. Kessler Scott guilty of possession of a fentanyl-related compound. Several weeks later, at the sentencing hearing, the trial court sentenced Mr. Kessler Scott to two years of community control, which included 99 days in jail with 39 days of jail-time credit.

{¶19} Mr. Kessler Scott raises three assignments of error on appeal:

5

**{¶20}** "[1.] Appellant's Conviction is not Supported by Sufficient Evidence.

**{¶21}** "[2.] Appellant's Conviction was Against the Manifest Weight of the Evidence.

**{¶22}** "[3.] The Trial Court Committed Plain Error in Giving a Jury Instruction on Flight."

### Sufficiency of the Evidence

**{¶23}** In his first assignment of error, Mr. Kessler Scott contends the evidence was insufficient to support his conviction for possession of a fentanyl-related compound because there was no evidence he had control over the drugs while he was in Lake County. Specifically, Mr. Kessler Scott contends there was insufficient evidence that he exerted constructive possession, i.e., dominion or control, over the drugs. Rather, the evidence reflected that his alleged accomplice, Mr. Combs, admitted that he purchased the fentanyl and shared it with Mr. Kessler Scott. Mr. Combs also admitted that he placed it in his grandmother's vehicle.

**{¶24}** "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

**{¶25}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after

6

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶26} When conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶ 34. Further, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *Id.* at ¶ 33.

{¶27} Mr. Kessler Scott was convicted of one count of possession of a Schedule I controlled substance, a fifth-degree felony, in violation of R.C. 2925.11.

{¶28} Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance analog." Further, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). "Possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶29} "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v.*

7

*Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id.*

{¶30} As our review of the evidence reveals, the state introduced sufficient evidence from which a jury could find that Mr. Kessler Scott was in constructive possession of the drugs at issue. Mr. Kessler Scott admitted to using the drugs, the drugs were stored in his container, and the drugs were found in the vehicle's center console between Mr. Combs and Mr. Kessler Scott, readily accessible to both while they were in Lake County. As the Eighth District explained in *State v. Trammer*, 8th Dist. Cuyahoga No. 85456, 2005-Ohio-3852, where the appellant made a similar argument that the evidence was insufficient because the state failed to prove the drugs belonged to him: "While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession." *Id.* at ¶ 24. In that case, crack cocaine was found between the center console and the passenger's seat, which the Eighth District determined was "obviously within control of the passenger" and the appellant (the driver). *Id.* at ¶ 25. Recognizing

8

that "'[j]oint possession exists when two or more persons together have the ability to control an object exclusive of others,'" the appellant and the passenger were found to jointly possess the drugs. *Id.*, quoting *State v. Alicea*, 8th Dist. Cuyahoga No. 78940, 2001 WL 1243944, *6 (Oct. 18, 2001).

{¶31} Similarly, in *State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0052, 2019-Ohio-5188, we found there was sufficient evidence that the passenger of a vehicle had constructive joint possession of methamphetamine where the drugs were found in the backseat of the vehicle at the time of the traffic stop, readily available and in close proximity to the passenger seat. *Id.* at ¶ 42. Further, the appellant-passenger was observed twisting and turning in her seat, which supported an inference that she was actually exercising dominion and control over items in the vehicle. *Id.* Because the driver was also able to exercise dominion and control over the drugs, the evidence further supported an inference of joint possession. *Id.* *See also State v. Jones*, 11th Dist. Ashtabula No. 2016-A-0017, 2017-Ohio-251, ¶ 27-28 (sufficient evidence of constructive possession existed where drugs were found under passenger seat).

{¶32} This is not a case where the drugs were simply in Mr. Kessler Scott's vicinity or where he lacked knowledge that drugs were in the vehicle. *See*, *e.g.*, *State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, ¶ 26 (the state failed to introduce sufficient evidence that the appellant had knowledge there was crack cocaine in the van; thus, it failed to establish constructive possession); *State v. Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072, ¶ 6 (1st Dist.) (where there was no evidence connecting the appellant-passenger to the drugs located in the vehicle other than his proximity, the evidence was insufficient to establish constructive possession). Rather, there are multiple factors from which inferences can be drawn that the drugs were in his

9

constructive, joint possession, i.e., both he and Mr. Combs admitted to using the drugs, the drugs were stored in his container, and the drugs were in close proximity to his person in the vehicle, readily available and in his vicinity.

{¶33} Because we find there was sufficient evidence from which a jury could find, beyond a reasonable doubt, that Mr. Kessler Scott constructively and jointly possessed the fentanyl while he was in Lake County, his first assignment of error is overruled.

### Manifest Weight of Evidence

{¶34} In his second assignment of error, Mr. Kessler Scott contends his conviction is against the manifest weight of the evidence since the testimony of Mr. Combs was the only testimony linking him to the fentanyl. Further, Mr. Combs testified that he purchased the drugs and pleaded guilty to possession of the drugs in a separate case.

{¶35} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.*

{¶36} "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶37} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."

10

*Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶38} Firstly, whether Mr. Combs' testimony was credible was for the jury to decide. The jury was aware that Mr. Combs purchased the drugs, that he pleaded guilty to possession of the same drugs, and that he admitted to lying to the police. As we have stated in regard to similar arguments in the past, this court is not in a position to view the witnesses who testified below, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *State v. Thompson*, 2016-Ohio-7154, 71 N.E.3d 1219, ¶ 7 (11th Dist.). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *Id.* The trier of facts is free to believe all, part, or none of the testimony of each witness appearing before it. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 19.

{¶39} Secondly, Mr. Combs' testimony was not the only evidence linking Mr. Kessler Scott to the crime. Rather, the state introduced the testimony of two of the officers who were at the scene, one of whom conducted a police interview once Mr. Kessler Scott was taken into custody, and a forensic analyst from the Lake County Crime Laboratory, as well as photographs of the drugs, the container, and an aerial map depicting the officer's search for Mr. Kessler Scott after he fled Mr. Combs' vehicle.

{¶40} The jury was free to believe the state's version of events, which indicated that Mr. Kessler Scott drove with Mr. Combs to purchase fentanyl in Cleveland. They stopped to use the drugs and "get high" on the side of the road before returning to Lake

11

County. A traffic stop was initiated on their way to the store after they spent a brief period of time at home, and upon searching the vehicle, the officers found fentanyl stored in Mr. Kessler Scott's container in the center console, readily available to Mr. Kessler Scott and Mr. Combs. Mr. Combs testified to Mr. Kessler Scott's use of the drugs, and once in police custody Mr. Kessler Scott admitted that he used the fentanyl, although he claimed the drugs belonged to Mr. Combs.

{¶41} Because we find the manifest weight of the evidence weighs heavily in support of the jury's verdict, and there is nothing to indicate the jury lost its way, Mr. Kessler Scott's second assignment of error is overruled.

### Jury Instruction on Flight

{¶42} Lastly, Mr. Kessler Scott contends the trial court committed plain error by instructing the jury on flight as consciousness of guilt. He contends this instruction was erroneous because he did not flee but rather returned to his home where he was easily found by the officers the following day.

{¶43} Requested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury. *State v. McEndree*, 2020-Ohio-4526, 159 N.E.3d 311, ¶ 63 (11th Dist.).

{¶44} This court generally reviews jury instructions under an abuse of discretion standard so long as the instruction is a correct statement of law. If the instruction was not a correct statement of law, appellate courts review the instruction de novo to "'determine whether the incorrect jury instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" *State v. Kovacic*, 11th Dist. Lake No. 2010-L-018, 2010-Ohio-5663, ¶ 17, quoting *Humphrey v. Belmont*, 7th Dist. Belmont

12

No. 95-BA-51, 1998 WL 670669, *2 (Sept. 24, 1998). Because defense counsel failed to object at trial, however, we are limited to reviewing for plain error. *See State v. Gordon*, 11th Dist. Ashtabula No. 92-A-1696, 1996 WL 200564, *1 (Mar. 22, 1996). "An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 56.

{¶45} "[A]n accused's "'flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."'" *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 167, quoting *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969), quoting 2 Wigmore, *Evidence*, Section 276, at 111 (3d Ed.1979). "Flight is more than merely leaving the scene of the crime—it would be unrealistic to expect persons who commit crimes to remain on the scene for ready apprehension." *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 28. In this regard, "'[f]light means some escape or affirmative attempt to avoid apprehension.'" *State v. Robinson*, 10th Dist. Franklin No. 17AP-853, 2019-Ohio-558, ¶ 29, quoting *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 19. Flight requires the accused to appreciate that he or she has been identified as a person of interest in a criminal offense and is taking active measures to avoid being found. *Ramos* at ¶ 28. The jury may infer that such circumstances demonstrate that the accused is avoiding the police only because he or she knows he or she is guilty and wishes to avoid the inevitable consequences of his or her crime. *Id.*

{¶46} As we explained in *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 & 96-L-090, 1997 WL 663423 (Sept. 30, 1997), "'The probative value of flight as circumstantial

13

evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.'" *Id.* at \*4, quoting *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977). A mere departure from the scene of a crime, however, is not to be confused with deliberate flight from the area in which the suspect is normally to be found. *Id.* at \*5.

{¶47} As our review of the evidence indicates, Mr. Kessler Scott fled as soon as the traffic stop was initiated. The deputy testified that as he left his patrol vehicle, "the passenger door opened up and I observed a male exit the passenger door, look back at me, and then run across Fairport Nursery Road westbound." A search ensued, with at least four officers pursuing Mr. Kessler Scott for over an hour. Thus, this was not a "mere departure from the scene of a crime," but an individual who deliberately fled from a traffic stop before the officer had an opportunity to approach the vehicle. He did not, as he contends, simply leave the scene of a crime and return home. He fled a traffic stop before a crime was even suspected. Under these circumstances, it cannot be said that the evidence does not warrant such an instruction.

{¶48} Whether Mr. Kessler Scott's flight was consciousness of guilt for the possession of the fentanyl or for the outstanding warrant in an unrelated case was for the jury to decide, since the jury was instructed that it "may" consider Mr. Kessler Scott's flight as consciousness of guilt for possession, and the jury was aware of the outstanding warrant. As the Second District explained in *State v. White*, 2015-Ohio-3512, 37 N.E.3d 1271 (2d Dist.):

14

{¶49} "Ultimately, though, the flight instruction is all but innocuous. It explains the limited use of the flight evidence and clearly says that the jury may consider [the appellant's] flight only if it finds that he was 'motivated by a consciousness or awareness of guilt.' And even if the jury finds that this motivated him, the instruction says that it still is not required to consider the flight evidence. We do not believe that giving the jury this particular instruction could have affected the outcome of the trial." *Id.* at ¶ 51.

{¶50} Mr. Kessler Scott cites to *Norwood* in support of his argument, which we find factually distinguishable from the instant case. In that case, the appellant entered the victim's apartment on three separate occasions and inflicted varying degrees of physical harm upon her. *Id.* at *6. On the first occasion, the appellant "left out of the building and ran into another building." *Id.* at *5. On the second, the appellant was arrested in the victim's apartment, and on the third, the appellant left with his sister and was dropped off at his mother's home instead of his father's. *Id.* at *6. We determined there was no evidence of flight on each occasion. Thus, the jury instruction was improper, inappropriate, and for the third occasion, insufficient because the appellant did not flee "to a situs where he could not have been located." *Id.* at *6. We determined, however, that any error in giving the instruction was harmless beyond a reasonable doubt due to the overwhelming evidence of guilt against the appellant. *Id.*

{¶51} The circumstances presented in *Norwood* are markedly different from the instant case, where Mr. Kessler Scott fled from a traffic stop before the officer even approached the vehicle.

{¶52} In sum, the state produced sufficient evidence to warrant the consciousness of guilt instruction, and the trial court provided a neutral instruction that the jury "may"

15

Case No. 2022-L-018

consider whether Mr. Kessler Scott's conduct was motivated by a consciousness of guilt for the instant crime.

{¶53} Mr. Kessler Scott's third assignment of error is overruled.

{¶54} The judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2022-L-018