[Cite as *State v. Hennigan*, 2024-Ohio-404.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2023-L-058 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| COREY J. HENNIGAN, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 001199 |

**O P I N I O N**

Decided: February 5, 2024
Judgment: Affirmed

*Charles E. Coulson,* Lake County Prosecutor*,* and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith*, Brian A. Smith Law Firm, LLC, 123 South Miller Road, Suite 250, Fairlawn, OH 44333 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Corey J. Hennigan ("Appellant"), appeals from his conviction of Domestic Violence, a first-degree misdemeanor, Failure to Comply With Order or Signal of Police Officer, a felony of the third degree, and Obstructing Official Business, a felony of the fifth degree, from the Lake County Court of Common Pleas. For the following reasons, we affirm.

{¶2} On December 20, 2022, the Lake County Grand Jury returned a four-count indictment charging appellant with, Abduction, a third degree felony, in violation of R.C.

2919.25(A)(2) (Count 1), Domestic Violence, a first degree misdemeanor, in violation of R.C. 2923.161(A) (Count 2), Failure to Comply with Order or Signal of Police Officer, a third degree felony, in violation of R.C. 2921.331(B) (Count 3), and Obstructing Official Business, a fifth degree felony, in violation of R.C. 2921.31 (Count 4).[1]

{¶3} Appellant entered a plea of not guilty at arraignment on December 27, 2022, and bond was continued at $75,000.00. On January 25, 2023, appellant filed a notice of alibi, alleging that at the time of the charged offenses, he was at or near property located in Follansbee, West Virginia. [2]

{¶4} On April 5, 2023, the State filed a motion to determine the admissibility of evidence, certified Verizon records, or, in the alternative, to allow for witness to testify via remote means. Similar motions were filed by the State pertaining to certified Google records on April 12, 2023.

{¶5} This matter proceeded to a jury trial on April 17, 2023.

{¶6} The following facts were established at trial.

{¶7} A.M. testified that she and appellant were visiting appellant's parents in Rock Creek, Ohio on April 11, 2022. According to A.M., she and appellant left around 5:00 or 6:00 p.m. in a white Chevy hatchback. A.M. believed that they were going to see the appellant's niece. A.M. testified that appellant then travelled in a different direction travelling toward Fairport Harbor. A.M. and appellant began to argue. Appellant then punched A.M. in the face multiple times. A.M. testified that she tried to exit the moving vehicle several times, but appellant would maneuver the vehicle to cause the door to

---

1. This case originated in Painesville Municipal Court, Case No. 22CRA01683, which was bound over on October 27, 2022.
2. At some point, the alibi was withdrawn as noted by defense counsel during the trial. T.p. Vol. III, p. 228.

Case No. 2023-L-058

close. A.M. also testified she attempted to move to the back seat to avoid appellant's strikes but was unsuccessful. She called 911.

{¶8} At 5:59 p.m. on April 11, 2022, Fairport Harbor Police Officer Kyle Ochsner ("Officer Ochsner") was dispatched for a 911 hang up. Dispatch was able to conduct a fast person search and identified the phone number of the caller as belonging to A.M. Officer Ochsner responded to the area of High Street and Sixth Street in Fairport Harbor, Lake County, Ohio. A.M. testified that when she saw the police officer's vehicle, she was able to get out of the Chevy driven by appellant.

{¶9} Officer Ochsner located A.M. walking on the corner of Sixth Street and Plum Street. He testified that A.M.'s face was "covered in blood and she had blood on her shirt." Officer Ochsner requested the fire department to assist given A.M.'s injuries. Jeffrey Smith, a firefighter/paramedic for Fairport Harbor Fire Department arrived to assess A.M.'s injuries. He testified that A.M. was "obviously assaulted. She had blood dripping from her face, her hands, and her shirt were covered in blood as well." Photographs were taken of her injuries.

{¶10} A.M. reported to Officer Ochsner that the appellant hit her and provided a description of the vehicle. During their encounter, the appellant drove by in the Chevy Malibu Maxx (a white hatchback) and A.M. was able to point out the vehicle to Officer Ochsner. Officer Ochsner left A.M. with the fire department for treatment and pursued appellant. Appellant then led Officer Ochsner on a high-speed pursuit lasting approximately 16 minutes and spanning approximately 21 miles. Officer Ochsner testified that appellant was driving more than the posted speed limits and in places exceeding 100 miles per hour. According to Officer Ochsner and the dash cam video of the pursuit,

3

Appellant failed to stop at several stop signs, and nearly hit other vehicles. The roadways were wet, it was raining, and visibility was diminished. The pursuit was ultimately terminated without apprehension.

{¶11} A.M., who was without health insurance, refused to go to the hospital. Instead, she was taken to the Fairport Harbor Village Hall. Officer Ochsner returned to speak with A.M. and he took additional photographs of her injuries. A.M. provided appellant's phone number and two email addresses, as well as appellant's possible location at Andover Lake Campgrounds.

{¶12} A search warrant was obtained for Google records from the email addresses as well as the Verizon phone records for appellant's cell phone number. Officer Kevin Rastall of the Willoughby Police Department utilized the Zetx program to upload the electronic records obtained from Google and Verizon into Google Earth. This information put appellant's phone in Erie or Greater Edinboro, PA the following day, April 12, 2022.

{¶13} On April 19, 2023, the jury found appellant guilty of Count 2, Domestic Violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A); Count 3, Failure to Comply With Order or Signal of Police Officer, a felony of the third degree, in violation of R.C. 2921.331(B); and Count 4, Obstructing Official Business, a felony of the fifth degree, in violation of R.C. 2921.31. The jury did not return a verdict on Count 1, Abduction. Bond was revoked and a presentence investigation ("PSI") was ordered.

{¶14} A sentencing hearing was held on May 17, 2023. The trial court determined that Count 3 and 4 merged for purposes of sentencing and the State elected to proceed

4

on Count 3. The court below sentenced appellant to 180 days on Count 2 which was ordered to run concurrently with the 36-month sentence imposed on Count 3.

{¶15} Appellant timely appeals and raises the following assignments of error:

[1]. Appellant's convictions are against the manifest weight of the evidence.

[2]. The failure of [a]ppellant's trial counsel to object to the State's presentation of photographs of the alleged victim, A.M., and of her injuries allegedly inflicted by appellant, marked as State's Exhibits 2A, 2B, 2C, 2D, 3A, and 3B, constituted ineffective assistance of counsel and a violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. [T.t. 125-126, 147, 279].

[3]. The trial court's decision to admit State's Exhibits 2A, 2B, 2C, 2D, 3A, and 3B constituted plain error and violated [a]ppellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution. [T.t. 125-126, 147, 279].

[4]. The trial court's decision to admit electronic data, from [a]ppellant's cell phone and Google accounts, from April 12, 2022, following the alleged pursuit of [a]ppellant's vehicle, was an abuse of discretion, in violation of [a]ppellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution. [T.t. 7, 235-237, 254].

{¶16} In his first assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. We disagree.

{¶17} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in

5

resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶18} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶19} As noted above, appellant was convicted of Domestic Violence, in violation of R.C. 2919.25(A); Failure to Comply with Order or Signal of Police Officer in violation of R.C. 2921.331(B); and Obstructing Official Business in violation of R.C. 2921.31.

{¶20} R.C. 2919.25(A) provides: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶21} R.C. 2921.331(B) provides: "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶22} R.C 2921.31 (A) provides: "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

6

{¶23} In regard to the domestic violence conviction, appellant alleges that "A.M.'s testimony was not credible," thus, his conviction is against the manifest weight of the evidence.

{¶24} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). This is because the trier of fact is in the best position to "observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 11th Dist. Trumbull Nos. 2005-T-0048, 2005-T-0054, 2006-Ohio-3428, ¶ 42. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶25} Appellant asserts that A.M.'s testimony was incredible because she could not testify to the exact number of times appellant struck her, and because A.M. testified to additional facts which she did not provide in her written statement. Appellant also notes that A.M. did not approach the officer but was walking away from him until he exited his car. The jury was free to believe all or none of the testimony.

{¶26} A.M.'s testimony did not reveal any inconsistencies or suggest that her testimony was not credible. In fact, A.M. consistently stated in her written statement and at trial that appellant struck her repeatedly causing physical injury.

{¶27} Notably, after consideration of the evidence, the jury could not reach a unanimous verdict as to the abduction charge. The record supports the jury's conclusion,

7

Case No. 2023-L-058

and their decision does not create a miscarriage of justice. As such, appellant's conviction for domestic violence is consistent with the manifest weight of the evidence.

{¶28} With respect to his convictions of failure to comply with order or signal of police officer and obstructing official business in violation of R.C. 2921.31, Appellant argues that these convictions are against the manifest weight of the evidence as Officer Ochsner was "the only person to witness Hennigan behind the wheel of the vehicle during the pursuit" and that his identification was "tainted by confirmation bias." A.M. testified that appellant was operating the Chevy Malibu Maxx when he began punching her. No one else was in the vehicle except for a dog. During her interaction with Officer Ochsner, appellant drove by. A.M. pointed out the vehicle shortly after Officer Ochsner arrived on the scene. Officer Ochsner pursued the vehicle and became locked in a circular driving pattern where he observed, through the open driver-side window, the appellant. Officer Ochsner testified that he had "no doubt" that appellant was the driver of the Chevy Malibu Maxx that he pursued on April 11, 2022.

{¶29} The jury was free to believe all or none of the testimony provided by Officer Ochsner. The record supports the jury's conclusion, and their decision does not create a miscarriage of justice. As such, appellant's convictions are consistent with the manifest weight of the evidence.

{¶30} Appellant's first assignment of error is without merit.

{¶31} In his second assignment of error, appellant alleges that trial court was ineffective for failing to object to the State's presentation of photographs of A.M., which were admitted into evidence as State's Exhibits 2A, 2B, 2C, 2D, 3A, and 3B.

8

**{¶32}** In his third assignment of error, appellant asserts that the trial court erred in admitting State's Exhibits 2A, 2B, 2C, 2D, 3A, and 3B.

**{¶33}** Because the second and third assignments of error relate to photographic evidence that was admitted at trial, these assignments of error will be discussed collectively.

**{¶34}** A decision to admit or exclude evidence is within the sound discretion of the trial court. *State v. Thompson*, 11th Dist. Portage No. 2018-P-0099, 2020-Ohio-67, ¶ 87. Absent an abuse of discretion, an appellate court will not reverse a trial court's decision. *Id.*, citing *State v. Sledge,* 11th Dist. Trumbull No. 2001-T-0123, 2003-Ohio-4100, ¶ 20.

**{¶35}** "The failure to object to the admission of evidence waives all but plain error. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. See Evid.R. 103(D) ("Nothing in this rule precludes taking notice of plain error affecting substantial rights although they were not brought to the attention of the court"); Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court")." *Thompson* at ¶ 88.

**{¶36}** Defense counsel did not object to the admission of State's Exhibits 2A, 2B, 2C, 2D, 3A, or 3B. Thus, we review for plain error.

**{¶37}** "A reviewing court is subject to three limits when correcting plain error: (1) there must be an error or deviation from a legal rule, (2) which is plain, i.e., an obvious error in the trial proceedings (3) affecting a 'substantial right,' meaning the trial court's error affected the outcome of the trial." *State v. Taugner*, 11th Dist. Portage No. 2022-P-0043, 2023-Ohio-2117, ¶ 13, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

9

Case No. 2023-L-058

**{¶38}** Appellant argues the photographs were gruesome and their admission ran afoul of Evid. R. 403.

**{¶39}** This Court noted in *State v. O'Brien*, 2013-Ohio-13, 986 N.E.2d 531, ¶ 51 (11th Dist.):

> As to the introduction of photographs in a non-capital murder case, the mere fact that [photographs] are gruesome or horrendous is not an automatic reason for exclusion. [*State v. Handwork*, 11th Dist. No. 2002-P-0134, 2004-Ohio-6181,], at ¶ 21. Instead, the basic balancing test under Evid.R. 403(A) must be employed; i.e., it must be decided if the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. [*State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322 ¶ 29 (11th Dist.)].

**{¶40}** A total of six photographs were admitted depicting A.M.'s injuries to her face which include blood, bruising, and swelling. The first set of photographs, State's Exhibits 2A and 2B, depicted the injuries as observed by Officer Ochsner when he first arrived on scene. The second set of photographs, State's Exhibits 2C and 2D, depicted the injuries a few hours later after A.M. was treated by paramedics. These pictures show some increased redness and swelling, with minimal blood on her shirt. The third set of photographs were of the injuries a day later, which depict increased bruising and swelling. These photographs corroborate the testimony of the witnesses, including the victim's testimony that appellant struck her repeatedly in the face. The photographs also tracked the visual progression of A.M.'s injuries which were consist with an assault.

**{¶41}** Upon review of the record, we conclude that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice to the defendant. Moreover, these photographs were not cumulative. While they depict the same injuries, the photographs offer different views and provide a progression of the

10

injuries. As such, the admission of these photographs did not constitute plain error. Appellant's third assignment of error is without merit.

{¶42} Turning now to appellant's second assignment of error regarding counsel's alleged failure to object to the admission of these photographs, the Supreme Court of Ohio noted in *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6-7:

> Under *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], a defendant claiming ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674. He must also show that the ineffective representation prejudiced his case: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
>
> Under *Strickland*, a court must apply "a heavy measure of deference to counsel's judgments," 466 U.S. at 691, 104 S.Ct. 2052, 80 L.Ed.2d 674, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶43} Therefore, in order to support a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test as set forth in *Strickland*. First, he must show that counsel's performance was deficient, which requires appellant to show that his trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Id.* at 687. He must also show that the ineffective representation prejudiced his case: "The defendant must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

11

of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See, also, State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶44} Because we concluded that the trial court did not err in the admission of the photographs of the victim's injuries, Appellant cannot satisfy either prong of the *Strickland* test. Thus, his second assignment of error is without merit.

{¶45} In appellant's fourth and final assignment of error, appellant alleges that the trial court erred in admitting electronic data from appellant's cell phone and Google accounts from April 12, 2022.

{¶46} As noted above, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Thompson*, 2020-Ohio-67, at ¶ 87. Absent an abuse of discretion, an appellate court will not reverse a trial court's decision. *Id.*, citing *State v. Sledge,* 11th Dist. Trumbull No. 2001-T-0123, 2003-Ohio-4100, ¶ 20. An abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004).

{¶47} Appellant asserts that the Verizon and Google records were inadmissible as they were irrelevant and prejudicial. Specifically, appellant argues that "any electronic data from the following day was irrelevant to whether Hennigan was guilty of any of the four counts in the Indictment." As previously noted, appellant filed a notice of alibi, indicating that he was in West Virginia at the time of the alleged offenses. At some point, this notice was withdrawn by counsel prior to the testimony of Officer Rastall. The State

12

argues that the evidence was relevant to establish flight and in turn, consciousness of guilt.

**{¶48}** "It is 'well established that the flight of an accused from justice is admissible as evidence of the consciousness of guilt * * * "and thus of guilt itself." (Citation omitted.)' *State v. James*, 11th Dist. Trumbull No. 2022-T-0107, 2023-Ohio-3524, ¶ 61, quoting *State v. Cline*, 11th Dist. Trumbull No. 2007-T-0052, 2008-Ohio-1500, ¶ 60. "'The probative value of flight as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.'" (Citation omitted.) *State v. Kessler Scott*, 11th Dist. Lake No. 2022-L-018, 2022-Ohio-4054, ¶ 46. *See James* at ¶ 61.

**{¶49}** "It has been held that '[f]light is more than merely leaving the scene of the crime—it would be unrealistic to expect persons who commit crimes to remain on the scene for ready apprehension.'" *James* at ¶ 62, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 28.

**{¶50}** As this Court has noted in *James*:

> Flight includes "'some escape or affirmative attempt to avoid apprehension'" and "requires the accused to appreciate that he or she has been identified as a person of interest in a criminal offense and is taking active measures to avoid being found." (Citations omitted.) *Kessler Scott* at ¶ 45. "The jury may infer that such circumstances demonstrate that the accused is avoiding the police only because he or she knows he or she is guilty and wishes to avoid the inevitable consequences of his or her crime." *Id.*

13

*James*, at ¶ 62.

**{¶51}** The jury was given the following instruction prior to deliberations:

> "Testimony has been admitted indicating that the defendant fled Fairport Harbor, Lake County, Ohio. You are instructed that flight alone does not raise a presumption of guilt but it may tend to indicate the defendant's consciousness or awareness of guilt. If you find that the facts do not support that the defendant fled, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness or awareness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give to this evidence."

**{¶52}** Appellant argues that the testimony should have been excluded as its probative value was substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). We disagree.

**{¶53}** At trial, Officer Ochsner testified that that the pursuit of appellant was terminated. Appellant was not apprehended at that time. Officer Ochsner attempted to locate appellant. A.M. did provide a possible location of Appellant, but neither he nor the Chevy were there. He then obtained search warrants for Google and Verizon records of appellant's email accounts and cell phone number. These records were later uploaded to software by Officer Rastall.

**{¶54}** Officer Rastall testified that the information which includes the location of the tower which was used, can be plotted using Google Earth. The exhibit created with this information was presented to the jury. The location data did not place appellant in or

14

near the area of the crime when the crime occurred. However, later pings placed appellant's phone around Greater Edinboro or Erie, Pennsylvania, the day after the underlying offenses occurred. Officer Rastall was also subject to cross-examination regarding his direct testimony and methodology for creating the cell-site location chart with Google Earth.

**{¶55}** This evidence could be considered by the jury, in conjunction with the testimony, that appellant was aware he or she has been identified as a person of interest in a criminal offense, to wit domestic violence, and was taking active measures to avoid being found by fleeing to a neighboring state. *James*, 2023-Ohio-3524 at ¶ 62. *See also Kessler Scott*, 2022-Ohio-4054, ¶ 45.

**{¶56}** Based upon our review, we find that the trial court did not abuse its discretion in admitting the electronic data from Verizon and Google from April 12, 2022. Thus, appellant's fourth and final assignment of error is without merit.

**{¶57}** For the foregoing reasons, we affirm the decision of the Lake County Court of Common Pleas.


EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.